The government charged Mr. Shults with four different instances of threatening a judge between September and December 2016. This is when Mr. Shults was an inmate at C.I. TAP. The December charge was based on a recorded conversation between Mr. Shults and the inmate Mr. Knox. The other three allegations were allegedly spoken to Mr. Knox, but not recorded. Prior to trial, the government said it was going to call Mr. Knox to prove up all four threats that were alleged in the indictment. It also moved to introduce alleged threats that Mr. Shults had made in 2017 when he was an inmate at Lompo. He was transferred to Lompo after this happened at TAP. The government said it needed to use the Lompo testimony to show the complete story and to prove that Mr. Shults had made true threats. The district court admitted this evidence as intertwined and also under 404B, and said it was direct evidence as to whether or not what was alleged at TAP had actually occurred. Trial comes around and the government changes its position. It decides it was not going to call Mr. Knox to testify, and it was essentially not going to try and prove up the first three threats. Instead, it relies on the recorded December 2016 conversation, and then introduces some related evidence, Mr. Shults' email, some phone calls, to prove up just that December threat. But the government is still allowed to introduce the 2017 evidence from Lompo, and that's what we're challenging in this appeal. The problem with the admission of the Lompo evidence is that when the government narrowed its case and elected to just go forward on the December 2016 recorded threat, that eliminated virtually all the probative value of the Valkovich evidence. I'm not sure I understand that argument, so help me. Your client is recorded as saying something to Mr. Knox. Correct.  That's right. Part of the defense is that wasn't meant as a threat to kill a federal judge or to harm a federal judge. It was idle chitchat or whatever. They have a later witness who says an identical or virtually identical, similar threat was communicated to me, and we actually moved along the process. We try to identify people. Why isn't that probative of your client's intent with respect to the first instance? Well, it's not probative of the intent because of a couple of things. First of all, because we have a recording of exactly what was said in that December conversation. It was an hour 45 minute conversation between Mr. Knox and Mr. Schultz. It was a high quality recording. We know exactly what Mr. Schultz said, and to the extent any context was needed to establish what had happened before or what was going on at that time, the government introduced emails and phone calls from Mr. Schultz to sort of fill in the blanks as to what was happening. And so, the intent was established, or the jury should have decided the intent based upon this recording, which had a verbatim account of the statements which Mr. Schultz made. Counsel, I get it. You're not suggesting that the government can't put on, if you will, superfluous extra evidence to the same effect. In other words, to try to button down that this was a serious threat. It seems like you're arguing that they had this great recording, that's all they really needed, and now here is improper. No, your honor, and the government did exactly that. It introduced emails that Mr. Schultz had sent, it introduced phone calls he had made to family to fill in those blanks. And to the extent that the government believed it needed extra acts to prove its case, it should have called Mr. Knox to testify. This case was about Mr. Schultz making threats when he was at CITAF. If the government needed additional threats to prove that the December 2016 comments were a true threat, it should have called Mr. Knox and talked about the alleged threats in September and October and November of 2016. Are you suggesting that they were required to do that, or you just wish that's what they had done? Well, I think that's what the district court should have made them do. This court's case law talks about 403 balancing with this sort of evidence, and it says you need to look at whether the other act of evidence is required to prove a point, you need to look at whether there's alternative pieces of evidence that are less prejudicial out there. And I think when you balance everything out in this case and look at what was out there for the government to use to prove out this one December 2016 allegation, the proper other acts to do that were the other acts. But don't we examine the district court's decision based on abuse of discretion here? We do, your honor. I don't know what, in what way, I mean you may not agree with what the district court decided, but in what way did the district court abuse its discretion? It abused its discretion because the law book evidence was inflammatory. I mean, it involved Mr. Schultz allegedly saying, and there were doubts as to whether Valkovich's account was even correct or not, but it had allegations that Mr. Schultz was offering $100,000, not just to kill the judge, but to kill the prosecutor, and perhaps kill another person out there, so those were really disturbing allegations. And it makes it more necessary for the government to prove what was a recorded conversation between Mr. Schultz and Mr. Knox. And again, if additional evidence was needed to buttress its argument as to December 2016, it should have been required to call. You're saying it was improper 404B. I'm saying it was improper 404B, and I'm also saying that if it was admissible under 404B as to intent, it should have been excluded under rule 403. But again, we review that for abuse of discretion. That's correct, your honor. If I can pivot to one of my sentencing arguments, it's rule 32I argument. It's a little bit of an interesting twist on rule 32I. What happened in this case is Schultz has sent a letter to the district court before sentencing, making a statement to the court. The district court properly asked Mr. Schultz at sentencing if he wished to make a statement. At that point, Mr. Schultz declined, but then later on in the hearing, Mr. Schultz said not to the district court but to his attorney, and can I make a statement? And the district court didn't respond to that and continued on with the hearing. But doesn't the record show that they don't even know whether the district court, whether the judge even heard that? And in addition, in this case, your client had submitted a letter to the judge explaining, in some way, his position about the entire matter. Isn't that correct? That is correct. A letter to the court before sentencing does not eliminate someone's right to allecute. I agree. But on the other hand, at least according to the record that I looked at, your client did not say to the judge that the record says that he wanted to say something more. He talked to his lawyer. It's not clear the judge even heard it. In what way was the allocution denied? Well, Judge Smith, you're correct that the record does not show that the judge heard it, but the court reporter heard it. The court reporter reported it. And I think when you're in a district court hearing, a sentencing hearing, and a judge is making findings, the proper way for a defendant to address the judge at that point in the hearing is to communicate with his counsel and have the counsel pass it on to the judge. And what he said to his counsel was loud enough for the court reporter to have reported it. There was no indication that he was speaking over the judge, and the judge was speaking at the same time. So you want us to... How do we review this, by the way? It wasn't raised below. Yeah, this is a plain error because counsel didn't raise it. Right. How can we infer from this silent record that the judge plainly erred because the court reporter heard it, even though we all agree it was directed to counsel? I'm having trouble figuring out how we can infer that the judge must have heard it. Well, I don't think we can infer that the judge must have heard it, but there's nothing in the record to show that the judge didn't hear it. We just don't know. The record isn't clear, and I think... Counsel, can I ask you this question? Yes, sir. If we all agree that there's no evidence at all that the judge heard it, first of all, the judge is much further back than the court reporter, much closer and on the same level as counsel and the defendant. The judge, on the other hand, is up on a bench and then back further away. We don't know whether the judge heard it. So I think we can only assume, for our purposes today, that he probably didn't hear it because he didn't say anything. So the error, if any, it would appear, would be the lawyer's error. And isn't that something that should be taken up, if at all, later in a separate motion? Well, sure. And if this goes to ineffective assistance, that should be raised in a 2255. Right. It doesn't seem like this is something for direct appeal. Well, I think the record, it doesn't show that he did hear it. It doesn't show that he didn't. And I think that the court can draw an inference based upon the fact that the reporter actually reported it. I'm not in a position to draw an inference. I'll tell you that for sure, because I know, as a matter of fact, because I've been a district judge over 32 years, that you don't necessarily hear everything. Plus, who knows what the judge is doing at that moment. Now, it would be another story if a lawyer had then turned around and said to the judge, Judge, my client would now like to address you. And the judge said, he already had his opportunity, he turned it down. That would present a whole different set of facts. But we don't have that set of facts. I understand. I wish counsel would have raised that. But it didn't happen. And your honor's correct as to what the record shows. Okay, counsel, your time is up. My colleagues may have additional questions afterwards. We may give you a little rebuttal time on that. But let's now hear from the government. Ms. Scott. Good morning, your honors. May it please the court. The district court did not abuse its discretion in permitting Pavel Valkovich to testify. Because the threats that Valkovich witnessed were part of the same criminal episode. And because they showed Schultz's motive, intent, and knowledge in making charged threats. The fight in this case was whether or not these were true threats. And the government had to show subjective and objective intent in that regard. And so Valkovich's testimony was probative of both the unrecorded and the recorded threats in that context. Additionally, Valkovich's testimony was especially probative where the defense in this case was that the defendant exaggerated and boasted. That was the defense from opening statement to closing argument. Additionally, sprinkled throughout the record is that Mr. Schultz wanted money from Knox. That's another motivation for having these conversations. That's in the excerpt of the record, pages 81 to 87. And so in light of those defenses, the intent is squarely at issue. And Valkovich has been more probative. Additionally, I would point out that Appellant doesn't seem to argue about Mr. Galeana. He was the inmate who also testified about some prior threats. And that doesn't seem to offend the appellant in this instance. But I suppose that goes to Judge Smith's question. Just as we probably shouldn't second-guess the government about its strategy in arguing at trial, we shouldn't second-guess the defendant about which incidents he cares to argue about on appeal. It's no concession that it was okay. He's just not arguing about it. Yes, and the only reason I mentioned that is because the logic is the same. The probative value of those other threats is to the intent of the recorded threat and the unrecorded charge threat. Additionally, the idea that just because the government didn't call Mr. Knox somehow makes Valkovich's testimony irrelevant, I think it doesn't make a lot of sense. Because the court's decision was based on the fact that Valkovich's testimony was inextricably intertwined and alternately evidence of knowledge and intent. The court didn't decide anything based on whether or not Mr. Knox was or was not going to be called in the government's case-in-chief. And in any event, Mr. Knox was called. And he was called, of course, because the defense absolutely wanted to cross-examine him and to impeach him. And the court will see in the record that that is very much what they were concerned about doing when the government said that it wasn't going to call Knox. They weren't concerned about somehow this making Mr. Valkovich's testimony irrelevant. They were concerned about, will they get the opportunity to cross-examine and to impeach Mr. Knox? And indeed, they did get that opportunity. So really what this is, is a 403 argument, I believe. And in this instance, I am so sorry, technology. In this instance, the court did engage in extensive balancing here and also even permitted the defense a lot of leeway on their cross of Mr. Valkovich. They got to bring in an entirely separate case in which Judge Guilford was threatened by another inmate. And they were able to cross Mr. Valkovich on that other case and his knowledge of that other case. Additionally, Mr. Valkovich's testimony did not encourage an emotional decision in this matter. Under a 403 analysis, that is another concern. But we're already in the context of a threats case where Mr. Schultz made some pretty serious reported threats that the jury heard about. This wasn't a, for instance, a fraud case where the government brought in these statements about this violent conduct in the context of a fraud case. This was already a threats case. So the emotional issue, I don't believe, is the same here. Can I ask you to address something your colleague didn't, and it's the sentencing? Yes. With respect to the enhancements, which seem to increase the guideline range quite significantly, I'm not sure it was clear error, but should the judge have applied a clear and convincing standard? My position then, and the government's position continues to be no. A preponderant standard is appropriate here because these enhancements were closely tied to the charge of offense. I would direct the court to U.S. and the Highness, 780 F. 3rd, 1285, and that was cited in the government's brief. But where the enhancements are based on the crime of conviction, a preponderant standard is appropriate. And regarding the enhancement for the intent to carry out the threat, yes, there was evidence in what Mr. Valkovich said for conduct, evidencing, and the intent to carry out the threat. But there was also a lot of evidence in the charged crime itself that he intended to carry out the threat. My question isn't whether there was sufficient evidence to support the enhancement. I don't think your colleague is arguing that, but maybe he is. What he's arguing is the judge applied the wrong burden of proof in determining whether the enhancement should apply. Yes, but in a situation where the application of the enhancements are so closely tied to the charge of offense, a preponderant standard is appropriate. That's also U.S. v. Berger, I believe, indicates that as well. And I'd ask the court to look at the cases cited in the defendant's brief for this idea. In Mesa de Jesus, that's a gun possession case where the enhancements were for uncharged kidnapping that the state dropped. In Hopper, it was an obstruction case where the enhancement was for violent conduct of which he was acquitted. In Jordan, it was a robbery case where the enhancement was for kidnapping in a gun based on statements from untested witnesses. In all of those cases, there was some underlying concern about the validity of the statements or the evidence the judge was relying on to enhance those sentences. And also, I'm sorry. Even if that weren't the case, where I come down, I think that's true so far, is that I find difficulty reconciling Jordan with Jaimus. And if I'm having trouble with that, I'm guessing that the law was not fair enough that we could attribute plain error to what the judge did here. Is that a fair statement? I completely agree, which is why the government noted that in its sentencing brief to begin with, while we believe that preponderance is appropriate, we also believe that these enhancements were proved by clear and convincing evidence. And the court did adopt that part of the government's sentencing brief in its findings. So yes, I don't think the law was particularly clear. But even if it was, the court adopted clear and convincing implicitly. And the government proved these enhancements by clear and convincing evidence because this at trial, the same judge heard this evidence presented at trial, heard these witnesses cross. This is a very different situation than enhancements that are based on a PSR that's pulling statements from police reports. So I do think the law wasn't clear. And even if it was, it was proved by clear and convincing evidence. Regarding the advocation, the government agrees with the court that it is plain error. And the defendant has not shown prejudice here. The record... Or he wouldn't have to show prejudice. He wouldn't have to show prejudice if, in fact, he'd made a request for allocution and the judge turned him down. Correct? I do. The case was a little unclear on plain error versus harmless error. No, let's assume that at sentencing, the judge said, do you want to allocute? And the defendant said, yes. And the judge said, I don't want to hear from you. We wouldn't look for prejudice, would we? No, I don't believe in that. That's right. So the question is whether or not a proper request for allocution was made or heard by the judge, not whether or not this guy was prejudiced by being unable to. Tell the judge what he wanted to tell him. Yes. But in this case and on this record, there was no proper request. There was no indication that the judge heard. And he had very able counsel. This was his trial counsel standing right next to him. If counsel thought that he had made a request that the judge didn't hear, counsel certainly could have spoken up but did not because this request was not to the judge. This was not a standard request as what your honor is describing at this point. Let me ask my colleague whether either has additional questions for the court. I do not. Thank you. Okay, very well. So, Mr. Bergen, I'll use your time up. We're going to give you a minute plus whatever on your colleague if you have any questions. You want to just kind of wrap up with a concluding comment? Sure, your honor. With respect to why we didn't object to the introduction of the Galeana evidence, it's because that wasn't very prejudicial. They investigated those allegations. Nothing came of it. They found that there was nothing there. And so the reason why we didn't fight over the Galeana is because it didn't hurt Mr. Schultz. And again, I point the court back to the district court's basis for admitting the lawful evidence. It's ER page 33. This is the exact quote. This is direct evidence as to whether or not what is alleged occurred at TAF is true. And that was what the district court said when we were talking about four months of alleged threats, three of which were not recorded. And when the government came back for trial and said, we're only going to focus on the recording, only on the December 26th recorded threat, that gutted the district court's basis for admitting the evidence in the first place. And so we'd ask the court to reverse the conviction based on the inappropriate admission of the lawful evidence and to give Mr. Schultz a new trial. Very good. Thank you. Do either of my colleagues have additional questions? Okay. Thank you very much to both counsel for your argument. The case just argued is submitted.
judges: M. Smith, Jr., Hurwitz, Ezra